UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOON, JR.,

        Plaintiff,               Case No. 5:17-cv-10494
                                 District Judge Judith E. Levy
v.                              Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR REMAND PURSUANT TO SENTENCE FOUR (DE 15) and GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for remand pursuant

to Sentence Four (DE 15), **GRANT** Defendant's motion for summary judgment

(DE 17), and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Robert Hoon, Jr., brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for disability insurance (DI) and

supplemental security income (SSI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for remand pursuant to Sentence Four (DE 15), the Commissioner's cross-motion for summary judgment (DE 17), Plaintiff's reply (DE 18) and the administrative record (DE 10).

### A.   Background and Administrative History

Plaintiff alleges his disability began on September 10, 2013, at the age of 35. (R. at 164.)  He lists several conditions (low back pain, degenerative disc disease (DDD), lumbar spondylosis, sacroiliac joint dysfunction of right side, and nerve damage in right leg) that limit his ability to work.  (R. at 191.)  His applications for DI and SSI were denied in July 2014.  (R. at 87-112.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 118-121.)  ALJ Stephen Marchioro held a hearing, and, on January 13, 2016, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 22-86.)  On January 24, 2017, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7, 21.)  Thus, ALJ Marchioro's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on February 15, 2017.  (DE 3.)

### B.   Plaintiff's Medical History

The administrative record contains approximately 412 pages of medical records, of which Exhibits 1F through 17F were available to the ALJ at the time of

his January 13, 2016 decision.  (R. at 38, 257-668.)  These records will be discussed in detail, as necessary, below.[1]

### C.   Hearing Testimony

Plaintiff testified at the December 2, 2015 hearing, when he was 37 years old.  (R. at 47-78.)  As Plaintiff is expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will refer to Plaintiff's testimony as necessary below.  Vocational expert (VE) Kenneth Browde testified at the hearing, providing answers to several hypothetical questions, at least one of which is directly at issue here and which will be discussed below.  (R. at 78-84, 231-236.)

### D.   The Administrative Decision

On January 13, 2016, ALJ Marchioro issued his decision.  (R. at 22-38.)  At **Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2013, the alleged onset date.  (R. at 27.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  DDD of the lumbar spine and obesity.  (*Id*.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 27-

---

[1] The record also contains February and March 2016 material from the Insight Institute of Neurosurgery & Neuroscience. (R. at 15-20.)  However, the Appeals Council considered it irrelevant, as it post-dated the ALJ's decision.  (R. at 2.)

[2] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

28.)  Between **Steps 3 and 4** of the sequential process, the ALJ evaluated

Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had

the RFC:

> . . . to perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except he can operate foot controls bilaterally occasionally
> [*exertional limitations*].  The claimant is never able to climb ladders,
> ropes, or scaffolds, but he is able to climb ramps and stairs frequently.
> The claimant is able to balance, stoop, kneel, crouch, and crawl
> occasionally [*postural limitations*].  He must avoid all exposure to
> excessive vibration, the use of unguarded moving machinery, and all
> exposure to unprotected heights [*environmental limitations*].

(R. at 28-31.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (R. at 31-32.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform.

(R. at 32-33.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, from September 10, 2013, through

the date of the decision.  (R. at 33.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

---

[3] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d
235, 239 (6th Cir. 2002).

under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

5

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.   Analysis

#### 1.   Discrepancy between hypothetical and RFC

Plaintiff claims the underlying sedentary hypothetical "was defective and contrary to the RFC stated in the unfavorable decision." (DE 15 at 15.) The Court notes that the ALJ's first hypothetical was less restrictive than the second hypothetical as to exertional, postural and environmental limitations; as to each, the VE testified there were jobs such an individual could perform. (R. at 80-82.) At Step 5, in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy, the ALJ mentioned those positions that the VE referenced in his answer to the second, more restrictive hypothetical. (R. at 32-33, 81-82.) This second hypothetical was as follows:

> I'd like to ask you a second hypothetical question. Please assume the same residual functional capacity previously described with the following

additional limitations. The hypothetical person would be limited to sedentary work as defined by the regulations. This hypothetical person could operate foot controls bilaterally only occasionally[.] [T]his hypothetical person could never climb ladders, ropes or scaffolds but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. This hypothetical person would have to avoid all use […] all exposure to excessive vibration, all use of unguarded moving mechanical parts and all exposure to unprotected heights. Would there be any jobs at the sedentary level that such a hypothetical person could perform?

(R. at 82.)

To the extent Plaintiff takes issue with the discrepancy between the hypothetical's and the RFC's postural limitations – namely, "*occasionally* climb ramps or stairs," versus "able to climb ramps and stairs *frequently*[,]" (*compare* R. at 81, 28 (emphases added)) – Plaintiff acknowledges that the hypothetical was "more restrictive" than the RFC. (DE 15 at 16.) Thus, notwithstanding Plaintiff "calling into question the process and the support for the RFC . . . [,]" (*id*), the jobs identified in response to the more restrictive hypothetical, which are the same jobs mentioned by the ALJ at Step 5, constitute substantial evidence in support of the ALJ's RFC, which is less restrictive. As this Court has noted, "an ALJ typically asks hypothetical questions that are more limiting than the plaintiff's ultimate RFC because the ALJ needs a broad basis under which to make a determination." *Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541, at *5 (E.D. Mich. Mar. 5, 2014) ("Plaintiff's argument that the ALJ must adopt an RFC based on any

one hypothetical question presented to the VE has no basis in law[.]")  (DE 17 at

18-19.)  I find no error in this regard.

### 2.    Opinion evidence

Plaintiff claims that the ALJ improperly assigned "great weight" to

the opinion of a "one time examining insurance company physician" and

improperly discounted the opinions of "treating physicians."  (DE 15 at 15.)  The

Social Security Administration (SSA) will evaluate every medical opinion it

receives.  "Unless we give a treating source's medical opinion controlling weight

under paragraph (c)(2) of this section, we consider all of the following factors in

deciding the weight we give to any medical opinion[:]"  (1) examining

relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5)

specialization; and (6) other factors.  20 C.F.R. § 404.1527(c) ("How we weigh

medical opinions.").  *See also* SSR 96-2p, 1996 WL 374188 (S.S.A. July 2, 1996);

*see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of

determination or decision for the weight [the ALJ] give[s] your treating source's

opinion,"  20 C.F.R. § 416.927(c)(2), and "must be sufficiently specific to make

clear to any subsequent reviewers the weight the adjudicator gave to the treating

source's medical opinion and the reasons for that weight,"  *Friend v. Comm'r of

Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam)

(internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc. Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

For the reasons stated below, I find that the ALJ's opinion gives good reasons for discounting the medical opinions at issue and that the Commissioner has met the goal of § 1527(c). *See Francis*, 414 F. App'x at 805. I also find that the

9

opinion "'permits the claimant and [this] reviewing court a clear understanding of the reasons for the weight given [to each] treating physician's opinion[.]'" *See id.* (quoting *Friend*, 375 F. App'x at 550).

### a.      Asit K. Ray, M.D.

The ALJ acknowledged Dr. Ray as having conducted an independent medical examination (IME).  (R. at 30-31, 651-657.)  The ALJ assigned Dr. Ray's opinions "great weight" as to Plaintiff's "functioning."  (R. at 30.)  In so doing, the ALJ stated that "Dr. Ray's opinions regarding the claimant's functioning is consistent with his own examination findings at Exhibit 16F and is also consistent with the findings at Exhibits 8F and 9F."  (R. at 30.)  In other words, the ALJ acknowledged the examining relationship and found Dr. Ray's functional opinions not only internally consistent but also consistent with certain records from the office of Dominador Laynes, M.D., Plaintiff's primary care physician. (R. at 443-466, 467-495).  20 C.F.R. § 404.1527(c)(1),(4).

### b.      Dominador Laynes, M.D.

The ALC acknowledged Dr. Laynes as Plaintiff's primary care physician. (R. at 29.)  Among other things, the ALJ observed:

> In October 2015, Dr. Laynes noted that the claimant has had unspecified work restrictions through much of the relevant period. (Exhibit 10F).  Exhibits 1F, 15F, and 17F also indicate that Dr. Laynes has continually written slips for the claimant to be absent from work for short periods at a time.  However, Exhibits 1F, 10F, 15F, and 17F do not indicate that Dr. Laynes has stated any specific functional

limitations for the claimant.  Rather[,] those exhibits indicate various unspecified limitations and indicate that the doctor [presumably, a typographical error, which should read "claimant," who is not a doctor] should be off work at various times.  I assign *little weight* to the opinions of Dr. Laynes as contained in Exhibits 1F, 10F, 15F, and 17F as they are vague and do not indicate any permanent occupational restrictions.  Further, these opinions are *inconsistent* with the generally unremarkable examination findings at Exhibits 8F, 9F, and 16F.

(R. at 31 (emphases added).)  As such, in assigning little weight to these opinions, the ALJ:  **(i)** acknowledged the examining relationship; **(ii)** having cited Exhibits 1F, 10F, 15F, and 17F, as well as Exhibits 8F and 9F (which, according to the transcript index, are attributable to Dr. Laynes and have date ranges from 2012 through 2015), acknowledged the treatment relationship; and **(iii)** considered them inconsistent with certain of Dr. Laynes's other office treatment records (R. at 443-466, 467-495), as well as Dr. Ray's March 17, 2014 opinion. (R. at 651-657).  20 C.F.R. § 404.1527(c)(1),(2),(4).  Moreover, work slips which are devoid of specific functional limitations do not obligate assessment by the ALJ to the extent suggested by Plaintiff.  *See Bass*, 499 F.3d at 510 ("Since Dr. Naum made no medical judgments, the ALJ had no duty to give such observations…controlling weight or provide good reasons for not doing so.").  To the extent there were conflicts in the record evidence, it was the ALJ's function to resolve them, not for this Court to do so on appeal. *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting

medical evidence. The trier of fact has the duty to resolve that conflict."); *see also*

*Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004).

### c.    Babu Nahata, M.D.

As noted below, the ALJ's review of the documentary evidence expressly

cited Dr. Nahata's November 25, 2013 notes (albeit not by name) and December

2013 EMG study.  (R. at 29, 279, 282-284 [Ex. 2F].)  Dr. Nahata also wrote "off

work" letters in February and March 2014.  (R. at 660-661 [Ex. 17F].)  On April

16, 2014, Dr. Nahata restricted Plaintiff to "not lifting, pulling or pushing more

than 10 [pounds], no sitting mo[r]e than 30 minutes in one position, no standing

more than 15 minutes in one position."  Dr. Nahata also restricted Plaintiff to "[n]o

crawling," and "no climbing on stairs."  (R. at 659 [Ex. 17F].)  In considering

Exhibit 17F, the ALJ stated:

> Dr. Nahata's opinion . . . that contains specific functional limitations . .
> . is clearly inconsistent with Dr. Ray's findings from March 2014 *and
> subsequent examination findings in 2015 and physical therapy notes
> from 2015*.  (Exhibits 8F, 9F, 13F, 14F, and 16F).  Therefore, I assign
> little weight to Dr. Nahata's opinion regarding functional limitations.
> As to Dr. Nahata's various off work notes, the notes indicate only
> temporary limitations.  (Exhibit 17F).  Dr. Nahata's opinion that the
> claimant should be off work at various times throughout the relevant
> period is inconsistent with findings at Exhibits 8F, 9F, 13F, 14F, and
> 16F.  Therefore, I also assign little weight to Dr. Nahata's off work
> notes at Exhibit 17F.

(R. at 31) (emphasis added).  Thus, as to Dr. Nahata, the ALJ's opinion considers

the examining and treatment relationships.  20 C.F.R. § 404.1527(c)(1),(2).

Moreover, the ALJ found certain of Dr. Nahata's opinions inconsistent with:  **(i)** Dr. Ray's March 17, 2014 opinion (from one month prior), which did not identify any residuals from Plaintiff's automobile accident (R. at 651-657); **(ii)** certain physical therapy notes from 2015, which were not consistent with Dr. Nahata's proposed functional limitations and contain multiple exercise log sheets showing that Plaintiff was able to complete various exercises and was improving (R. at 558-587, 588-630); and, **(iii)** certain records from Dr. Laynes's office (R. at 443-466, 467-495).  20 C.F.R. § 404.1527(c)(4).  Additionally, the ALJ accurately observed that "upon discharge from physical therapy, the claimant reported much improved functioning" (R. at 29), and the discharge note itself stating that Plaintiff "is now able to do many of his daily ADL's with less difficulty compared to when he started his therapy program."  (R. at 366.)

### d.   Lakshmana Madala, M.D. and Recap

Dr. Madala treated Plaintiff on December 31, 2013.  (R. at 498-503, 513.) The musculoskeletal exam revealed, among other things, antalgic gait, painful heel walking, bilateral positive straight leg raising test, some areas of moderate pain in the lumbosacral spine, as well as mild paraspinal tenderness.  (R. at 500.)  On January 9, 2014 and January 23, 2014, Dr. Madala performed lumbar epidural steroid injections and facet join injections.  (R. at 504-507.)  Plaintiff contends

these records "further confirm the presence of pain and symptomatology[.]"  (DE
15 at 23-24.)

Plaintiff argues that Dr. Ray's opinion is "inconsistent with the
hypothetical[,]" and, presumably, the RFC.  (DE 15 at 17.)  Plaintiff contends that
the October 10, 2013 Oswestry score is inconsistent with Dr. Ray's March 17,
2014 findings and that the October 22, 2013 physical therapy note found "a severe
degree of impairment."  (DE 15 at 21-22; R. at 347, 356, 651-657.)  Plaintiff
further contends that the validity of his complaints and limitations is supported by
"overwhelming evidence," such as "[t]he records of Drs. Laynes, Nahata and
Madala," as well as, "the physical therapy records spanning the years 2013, 2014
and 2015 . . . ."  (DE 15 at 24.)  Nonetheless, as shown above, the ALJ
appropriately considered the opinion evidence and provided explanations for doing
so based on the factors set forth in 20 C.F.R. § 404.1527(c).  It is not for this Court
to reweigh the evidence, and in the absence of legal error, the ALJ should not be
reversed, "'even if there is substantial evidence in the record that would have
supported an opposite conclusion,'" *Blakley*, 581 F.3d at 406 (internal citation
omitted), and even if this Court would have reached a different conclusion in its
own interpretation of the facts. *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783
(6th Cir. 2017) ("[A] decision supported by substantial evidence must stand, even
if we might decide the question differently based on the same evidence.") (citing

*Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).  *See also,*

*Mullins v. Sec'y of Health & Human Servs.*, 836 F. 2d 980, 984 (6th Cir. 1987)

("Claimant's argument rests solely on the weight to be given opposing medical

opinions, which is clearly not a basis for our setting aside the ALJ's factual

findings.")  The ALJ was permitted to adopt the opinion of the independent

medical examiner over that of the treating sources.  Indeed, "the more consistent a

medical opinion is with the record as a whole, the more weight we will give to that

medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  *See also Blakley*,

581 F.3d at 409 ("Certainly, the ALJ's decision to accord greater weight to state

agency physicians over Blakley's treating sources was not, by itself, reversible

error.").  Moreover, lack of congruency within a treating source's own records,

lack of support for his or her conclusions, and inconsistencies with the records of

other health professionals who performed examinations or provided treatment are

legitimate bases for discounting a treating source's opinion.  S*ee Leeman v.*

*Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount

treating-physician opinions that are inconsistent with substantial evidence in the

record, like the physician's own treatment notes.").

### 3.    RFC

Plaintiff claims the RFC "did not incorporate all of the Plaintiff's severe

impairments or limitations . . . ."  (DE 15 at 16.)  Citing SSR 96-8p ("Assessing

Residual Functional Capacity in Initial Claims"), Plaintiff contends the

hypothetical was defective because "it had no support in the record." (DE 15 at

17.)

### a.   Exertional and postural limitations

As noted above, the ALJ found that Plaintiff had the RFC to perform the

exertional limitations of sedentary work, except that he can "operate foot controls

bilaterally occasionally." (R. at 28.) In arriving at this determination, the ALJ

explained:

> The documentary evidence does not demonstrate disabling back pain
> or any associated disabling functional limitations. Rather the evidence
> demonstrates that the claimant is no longer able to perform a full range
> of work. However, by restricting the claimant to performing less than
> a full range of sedentary work, I find that there still exist jobs in the
> national economy that the claimant is able to perform.

(R. at 29.) After generally referencing Plaintiff's September 10, 2013 motor

vehicle accident (*see* R. at 314-324) and Dr. Laynes's October 3, 2013 through

April 18, 2014 records (R. at 257-273), the ALJ referenced the objective evidence

contained in the September 10, 2013 lumbar spine CT scan (R. at 316-317, 322-

323) and December 18, 2013 lumbar spine MRI (R. at 304, 375, 512), and stated:

> Medical treatment shortly after the accident revealed some mild to
> moderate limitations, but more recent examinations have been
> generally unremarkable. In November 2013, examination revealed
> the claimant had a mild cervical strain and mild spasm noted. [R. at
> 280] The claimant also had mild tenderness in thoracic lumbar area
> and range of motion was limited in all planes. [R. at 279] There was
> also evidence of *mild sacroiliac (SI) joint tenderness*. ([*Id.*]). The

claimant participated in physical therapy during October and November 2013. [R. at 347-371] Upon discharge from physical therapy, the claimant reported much improved functioning. ([R. at 366]). A December 2013 EMG study by Babu Nahata, M.D., indicated *right sided sural neuropathy* but *no evidence of lumbar radiculopathy*. ([R. at 282-284]). In February 2014, examination revealed some limited range of motion of the back, but full strength and straight leg raising was negative. (Exhibit 4F [*see* R. at 262]). In March 2014, examination revealed mild strain and spasm throughout the spine. [R. at 293-295] The claimant again had some limited range of motion of the back and *tenderness at the SI [sacroiliac] joint. (Id.)*.

(R. at 29 (emphases added).)

The ALJ also assessed the postural limitations of "never able to climb ladders, ropes, or scaffolds," but "able to climb ramps and stairs frequently[,]" and concluded that Plaintiff had the RFC to "balance, stoop, kneel, crouch, and crawl occasionally." (R. at 28.) The ALJ's review of the documentary evidence included mention of records from April 2014 through summer 2015, including physical therapy discharge notes indicating "considerable progress with pain and *radicular* symptoms[,]" (*see* R. at 620-630 (emphasis added)),[4] after which the ALJ explained:

---

[4] This appears to have been a summarization by the ALJ, as the assessment notes, verbatim, that Plaintiff "made considerable progress with regard to LE [lower extremity] numbness and tingling with flexion program, and moist heat helped to mitigate low back pain and muscle tightness. Demonstrates appropriate use of postural positioning to reduce symptoms and understands he must keep up with his spinal stability program to reduce back pain." (R. at 628.)

> Additionally, Exhibit 8F indicates that [t]he claimant has regularly had a body mass index (BMI) above 35.  [R. at 443-466][5]  Any BMI measure over 30 indicates an obese body habitus.  I have considered the claimant[']s back pain and obesity as an aggravating factor in formulating the [RFC].  Considering all of the claimant's *severe impairments*, I have limited the claimant to performing less than a full range of sedentary work with the above-stated postural limitations.

(R. at 30 (emphasis added).)

Plaintiff appears to take issue with the exertional and postural limitations, as he claims the hypothetical, and, presumably, the RFC, "ignored the severe impairments of bilateral sacroiliac joint pain, radiculopathy, lumbar stenosis and right sural neuropathy[,]" as well as limitations "noted in the medical histories." Also, pointing to his severe impairments of lumbar spine DDD and obesity, Plaintiff claims that the ALJ "did not appropriately take into account [Plaintiff's] significant symptomatology . . . [,]" nor did the ALJ "address in any way the finding of sural neuropathy[,] which was confirmed by an EMG evaluation."  (DE 15 at 17.)  To the extent Plaintiff is arguing that any of these conditions – whether the lumbar spine DDD or obesity found to be severe at Step 2 or one of the others – were ignored, "not appropriately take[n] into account," or unaddressed, this portion of his brief does not show either:  **(i)** an error in the ALJ's consideration of the documentary evidence, which, as italicized above, expressly cites some of

_____

[5] It does appear that Plaintiff's BMI was 34.55 on August 8, 2011.  (R. at 447.)

these conditions; or **(ii)** how the RFC's exertional and postural limitations fail to account for Plaintiff's physical impairments.

### b.    Environmental limitations and recap

Finally, the ALJ assessed environmental limitations – "must avoid all exposure to excessive vibration, the use of unguarded moving machinery, and all exposure to unprotected heights[,]" which the Court assumes was intended to accommodate the potential side effects of prescriptions for Norco 5 and cyclobenzaprine.  (R. at 28; R. at 319, 320, 444.)  Plaintiff does not appear to contest these environmental limitations, nor does he appear to argue that a manipulative, visual, communicative or environmental limitation should be assessed.  Plaintiff not having shown reversible error in the ALJ's assessment of exertional and postural limitations, the RFC should be affirmed.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").

### 4.    Credibility

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible for the reasons explained in the decision.  (R. at 29.)  Plaintiff challenges this conclusion, preliminarily contending that the hypothetical, and, presumably, the RFC, "ignored

Plaintiff[']s absent[eeis]m required by his medical treatment and therapies[,]" as

well as limitations "described in his testimony . . . ."  (DE 15 at 17, 26-28.)

Plaintiff's statement of error cites SSR 96-7p ("Assessing The Credibility of

an Individual's Statements"), which provides, in pertinent part:

> In recognition of the fact that an individual's symptoms can sometimes
> suggest a greater level of severity of impairment than can be shown by
> the objective medical evidence alone, 20 CFR 404.1529(c) and
> 416.929(c) describe the kinds of evidence, including the factors
> below, that the adjudicator must consider in addition to the objective
> medical evidence when assessing the credibility of an individual's
> statements:
>
> 1.     The individual's daily activities;
>
> 2.     The location, duration, frequency, and intensity of the
>        individual's pain or other symptoms;
>
> 3.     Factors that precipitate and aggravate the symptoms;
>
> 4.     The type, dosage, effectiveness, and side effects of any
>        medication the individual takes or has taken to alleviate pain or
>        other symptoms;
>
> 5.     Treatment, other than medication, the individual receives or has
>        received for relief of pain or other symptoms;
>
> 6.     Any measures other than treatment the individual uses or has
>        used to relieve pain or other symptoms (e.g., lying flat on his or
>        her back, standing for 15 to 20 minutes every hour, or sleeping
>        on a board); and
>
> 7.     Any other factors concerning the individual's functional
>        limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186, at *3 (S.S.A. July 2, 1996).

Plaintiff disputes the ALJ's statement that "[t]he documentary evidence does not demonstrate disabling back pain or any associated disabling functional limitations."  (R. at 29; see also R. at 31 ("[t]he documentary evidence does not show that the claimant is incapable of performing all work, but it is consistent with his ability to perform sedentary work.").)  Plaintiff contends this is "contrary to the evidence of record," and further contends that "there is no cogent analysis of the evidentiary record whatsoever in relation to the findings."  (DE 15 at 26.)  The Undersigned begs to differ. The ALJ's opinion, on its face, reveals significant cogent analysis of the evidentiary record, as described above and below in this report.

Plaintiff contends that objective evidence - such as a positive EMG evaluation, "numerous clinical evaluations," and Oswestry Scores – support Plaintiff's complaints, while only the opinion of Dr. Ray supports the ALJ's credibility assessment.  (DE 15 at 27.)  Here, the Court assumes Plaintiff is referring to, at least:  **(a)** the December 11, 2013 electrodiagnostic report (R. at 284); **(b)** Dr. Nahata's various diagnoses of "cervical strain and spasm," (R. at 279, 280, 289, 294, 298); **(c)** Dr. Laynes's June 9, 2015 assessment of "significant paraspinal spasm," (R. at 454); and, **(d)** the October 10, 2013 physical therapy initial examination rating of 52% disability in Oswestry Low Back pain (R. at 347) and/or the July 21, 2015 goal to "[d]ecrease [O]swestry from 58 to 45 in order to

improve ability to lift objects and work[,]" (R. at 523). (DE 15 at 19, 20, 21, 23, 24). However, in his consideration of the documentary evidence, the ALJ expressly considered the EMG report, as well the fact that Plaintiff participated in physical therapy during October and November 2013, and also the June 2015 assessment of spasm. (R. at 29-30.)

To the extent Plaintiff claims the ALJ "did not sufficiently articulate his opinion concerning Plaintiff[']s credibility[,]" the Court should not conclude that Plaintiff's credibility was discounted "solely based upon a paucity of objective medical evidence." (DE 15 at 27-28.) At the outset of his RFC analysis, the ALJ noted that Plaintiff "testified that his ability to function daily including performing exertional and postural activities is greatly reduced because of back pain." (R. at 29.) Along the way, he noted things such as Plaintiff's reports of: (a) "exercising at Planet Fitness" (R. at 416); **(b)** "increased back pain *after sitting at a casino for five hours*[,]" (R. at 458) (emphasis added); and **(c)** an ability to walk one mile (R. at 453, 483). (R. at 30.) Thus, beyond the ALJ's consideration of the documentary and opinion evidence, the ALJ took into consideration Plaintiff's "daily activities." 20 C.F.R. § 404.1529(c)(3)(i). Again, it is not for this Court to "try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass*, 499 F.3d at 509.

### G.   Conclusion

"Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek*, 880 F.3d at 783 (quoting *Richardson*, 402 U.S. at 401).  Here, there is such evidence to support the ALJ's conclusion, and the ALJ adequately and unerringly explained how he relied upon and applied it in reaching his decision. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for remand pursuant to Sentence Four (DE 15), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  February 26, 2018          s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE



### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on February 26, 2018, electronically and/or by U.S. Mail.

                                   s/Michael Williams
                                   Case Manager for the
                                   Honorable Anthony P. Patti

24